## A02A1077. HORNER v. THE STATE.
(570 SE2d 94)

BLACKBURN, Chief Judge.

Following a jury trial, Norris Franklin Horner a/k/a Ricky Wayne Stillwell appeals his conviction of theft by taking an automobile, contending that the trial court erred in (1) denying Horner's motion for a directed verdict and his motion for judgment notwithstanding the verdict alleging the insufficiency of the evidence; (2) admission of prior convictions from North Carolina; (3) admission of evidence of a separate auto theft in Newnan, Georgia; and (4) allowing witness identification of a booking photo. Horner also asserts that he received ineffective assistance of trial counsel. For the reasons set forth below, we affirm.

On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[1] and does not weigh the evidence or determine witness credibility. Conflicts in the evidence are for the jury to resolve.

(Citations omitted.) *Payne v. State*.[2]

So viewed, the record shows that, on or about July 6, 1999, Horner, using his Stillwell alias checked into the Crest Motel in Covington, Georgia, driving an old, beat-up Chevy Malibu. The clerk saw and spoke with Horner a number of times over the next few days. On July 15, 1999, the clerk saw Horner put the license plate from the Malibu on a red car, abandon the Malibu in the motel parking lot, and drive away. On that same day, Reba Landress reported to the Covington police that her 1989 red Toyota Corolla station wagon had been stolen about a half-mile from the Crest Motel.

Three days later, on July 18, 1999, a hit and run accident involving the 1989 red Toyota Corolla station wagon stolen in Covington occurred in Newnan, Georgia. The vehicle identification number matched that of the red Toyota. The license plate affixed to the Toyota was determined to belong to a 1983 Chevy registered in North Carolina. Two traffic citations issued to Ricky Wayne Stillwell, Horner's alias, were found inside the red Toyota by Newnan police officers. The citations reflected that the tag found on the red Toyota had been on the 1983 Chevy at the time the tickets had been issued in South Carolina. That same day, about two miles from the scene of

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Payne v. State*, 248 Ga. App. 158, 159 (1) (545 SE2d 336) (2001).

the hit and run accident, a 1985 blue Dodge Diplomat was reported stolen from a convenience store.

On July 27, 1999, Horner failed to pay for his meal at the Golden Corral restaurant in Cordele, Georgia, and jumped into a blue car and drove away. The restaurant manager called police and gave them the blue car's license plate number. Both Horner and the blue Dodge Diplomat were discovered at a local hotel. The tags matched the Dodge Diplomat stolen in Newnan. The police escorted Horner back to the restaurant, where both the manager and a waitress identified him, and he was arrested. Horner represented himself to be Ricky Stillwell to the police officers at this time. Numerous papers located in the blue Dodge bore the name Ricky Stillwell. Through further investigation, the police determined that the defendant was Norris Horner, and that Ricky Stillwell was an alias he used.

1. We first address Horner's contention that the trial court erred in overruling his motion in limine to exclude proof of the Newnan auto theft because it was highly prejudicial to Horner, and because the theft was a similar transaction which required a hearing under Uniform Superior Court Rule 31.3, and its prejudice to the defendant outweighed its probative value. He further contends that the trial court gave no appropriate limiting instructions.

This argument is without merit, as the Newnan auto theft was not a similar transaction, but was, rather, a relevant part of Horner's criminal scheme. In *Igidi v. State*,[3] we held that " '[t]he state is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial.' " Id. at 583 (1). The Newnan auto theft established a relevant link between Horner's presence in Covington at the time of the crime and his ultimate arrest in Cordele.

The blue Dodge was stolen in Newnan near in time and place to the location where the red Toyota stolen in Covington was recovered; Horner was arrested after being observed driving away from the Cordele restaurant in the blue car; and documents bearing Horner's alias were recovered in both the blue car and the Toyota. " 'Acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense.' " *Stirrat v. State*.[4]

"Moreover, as this evidence was admissible as circumstances of the arrest and as part of a continuing criminal enterprise, it is not objectionable on grounds that it was a 'similar transaction' for which

---

[3] *Igidi v. State*, 251 Ga. App. 581 (554 SE2d 773) (2001).
[4] *Stirrat v. State*, 226 Ga. App. 350, 353 (2) (b) (486 SE2d 640) (1997).

14

compliance with Superior Court rules . . . is required." *Shakim v. State*.[5] In light of the foregoing, this enumeration of error is without merit.

2. Horner argues that the police incident reports of the Newnan hit and run incident and the theft of the blue Dodge and the police officer's testimony about the Cordele restaurant waitress's identification of Horner were inadmissible hearsay and had no probative value even if admitted without objection. While our Supreme Court has held that narrative portions of police reports are not admissible, police reports which do not contain narrative material may be admissible under the business record exception to hearsay. *Brown v. State*;[6] *Johnson v. State*.[7] The two Newnan reports contained no narrative portions and are admissible as an exception to the hearsay rule. In *Holt v. State*,[8] we held that " '[a] law enforcement officer is permitted to testify to a vocal fact of identification witnessed by himself without its being subject to a hearsay objection.' " Therefore, the Cordele officer's testimony that the waitress identified the defendant as the man who failed to pay for his meal was also admissible under this exception to the hearsay rule. Contrary to Horner's contentions, evidence which is admissible as an exception to the hearsay rule has probative value and may be relied upon to prove the fact asserted. *Eubanks v. State*;[9] *Moore v. State*.[10]

In any event, Horner never objected to any of the hearsay testimony and documents. " 'Issues which were not raised in the trial court cannot be raised for the first time on appeal.' " *Mincey v. State*.[11] Moreover, even absent the hearsay evidence, there was sufficient evidence upon which the jury could find beyond a reasonable doubt that the defendant was the man known as Ricky Stillwell and was guilty of the offense charged.

3. Horner also asserts that, at his sentencing hearing, the trial court erred by considering two prior convictions from North Carolina because the records were not properly authenticated, they were incomplete because they did not include the indictments, and no showing was made of the validity of the guilty pleas therein. These records were served on defense counsel prior to the swearing-in of the jury.

Although Horner contends on appeal that the trial court improperly considered his prior convictions in imposing sentence, this objec-

[5] *Shakim v. State*, 211 Ga. App. 199, 202 (3) (438 SE2d 673) (1993).
[6] *Brown v. State*, 274 Ga. 31, 33-34, n. 2 (549 SE2d 107) (2001).
[7] *Johnson v. State*, 247 Ga. App. 660, 663 (3) (544 SE2d 496) (2001).
[8] *Holt v. State*, 210 Ga. App. 81 (2) (435 SE2d 288) (1993).
[9] *Eubanks v. State*, 180 Ga. App. 355 (349 SE2d 244) (1986).
[10] *Moore v. State*, 154 Ga. App. 535, 538 (268 SE2d 706) (1980).
[11] *Mincey v. State*, 186 Ga. App. 839, 841 (4) (368 SE2d 796) (1988).

tion was not raised at the sentencing hearing and was thereby waived. *Moody v. State*.[12]

We note that this contention is without merit in any event. First, the records were adequately authenticated. "Our Code provides: 'The certificate or attestation of any public officer . . . shall give sufficient validity or authenticity to any copy or transcript of any record, document, paper of file, or other matter or thing in his respective office, or pertaining thereto, to admit the same in evidence.' . . . OCGA § 24-7-20." (Emphasis omitted.) *Whitlock v. State*.[13] In this case, the records identified the court, contained a filed and date stamp, certified that each record is "[a] true copy of the original filed in this office" under the signature of the clerk of superior court whose authority was indicated by the initials following the clerk's signature, and contained the raised seal of the clerk. Accordingly, the North Carolina convictions were properly authenticated.

Horner, next, mistakenly asserts that *Watson v. State*[14] requires the inclusion of the indictments before the convictions may be admitted. *Watson* is factually distinguishable. In *Watson*, the defendant sought to impeach his ex-wife by introducing a cocaine possession conviction. In order to conceal his own name, he redacted it from the indictment. The State challenged the admission of the conviction because the indictment was not a true and correct copy of the original. This Court held that under these circumstances, it was not an abuse of discretion for the trial court to require inclusion of the original indictment as a part of the record of conviction.

Lastly, Horner argues that the State had the burden of proving that the guilty plea, in one of the North Carolina convictions, was valid.[15] In *Rose v. State*,[16] our Supreme Court held that in admitting a prior guilty plea, the State has the burden of proving that the defendant was represented by counsel. Once shown, the defendant must then show any infringement of rights or procedural irregularities. Here, the North Carolina judgment presented at the sentencing hearing shows that Horner was represented by counsel at the entry of his guilty plea. This argument is without merit.

4. Horner contends that the admission of the booking photo was error, because it was irrelevant and so impermissibly suggestive that there was a substantial likelihood of mistaken identification in violation of the due process clause of the Fourteenth Amendment of the

---

[12] *Moody v. State*, 206 Ga. App. 387, 391 (6) (425 SE2d 397) (1992).

[13] *Whitlock v. State*, 174 Ga. App. 5 (329 SE2d 286) (1985).

[14] *Watson v. State*, 230 Ga. App. 79, 81 (4) (495 SE2d 305) (1998).

[15] The judgment on the other conviction shows that Horner was convicted by a jury, rather than by entering a guilty plea.

[16] *Rose v. State*, 275 Ga. 214 (563 SE2d 865) (2002).

U. S. Constitution and Article I, Section I of the Georgia Constitution. At the trial, conducted approximately 14 months after the clerk of the Crest Motel in Covington had seen Horner, he was unable to positively identify him as the person he was testifying about because of his changed appearance. The clerk testified that although he was similar in height, Horner's appearance was different at trial. Horner had grown a beard and a long ponytail and was heavier than at the time of the incident. He was also dressed completely differently. The clerk, who had vision difficulty, also testified that he had broken his glasses shortly before trial. The State then asked the trial court to allow the clerk to view the booking photograph of Horner made shortly after his arrest in Cordele. Defense counsel objected on the basis that the photograph, which was taken approximately two weeks after the clerk had seen Horner, put Horner's character into evidence and its prejudicial effect outweighed its probative value. The court overruled the objection, and the clerk identified the person in the photograph.

The trial court did not err in admitting the photograph into evidence over Horner's objection. "The photograph was relevant to identify appellant [Horner] and to show how he appeared at the time of the crime. . . . Since booking photographs have been held not to inject character into evidence because they do not suggest that the defendant has committed previous crimes, appellant [Horner] has failed to demonstrate how the admission of the photograph prejudiced him." *Rittenhouse v. State*.[17] See also *Duckworth v. State*[18] (mug shot was crucial to compare with witness description of perpetrator); *Pickett v. State*[19] (mug shot admissible to show the defendant looked different at the time of arrest).

Horner also asserts that allowing the clerk to use the booking photo for identification purposes was error because the single booking photo was impermissively suggestive. Horner waived this ground for objection since it was not raised at trial. "Enumerated errors which raise issues for the first time in a motion for new trial or on appeal present nothing for review." *Williamson v. Harvey Smith, Inc.*[20] See also *Sharpe v. State*.[21]

Even had Horner not waived his rights as to this issue, this argument is without merit. We have held that a witness's in-court identification of the actual person based on the witness's personal observations of the defendant was not error even when a pre-trial

---

[17] *Rittenhouse v. State*, 272 Ga. 78, 79-80 (3) (526 SE2d 342) (2000).
[18] *Duckworth v. State*, 246 Ga. 631, 635 (6) (272 SE2d 332) (1980).
[19] *Pickett v. State*, 226 Ga. App. 743, 746 (2) (487 SE2d 653) (1997).
[20] *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 748 (2) (542 SE2d 151) (2000).
[21] *Sharpe v. State*, 272 Ga. 684, 689 (7) (531 SE2d 84) (2000).

identification had been excluded as suggestive. *Gardner v. State.*[22] Here, the photographic identification was no more suggestive than any other in-court identification procedure when the defendant may be almost the only logical person in the courtroom from which to choose. *Ralston v. State.*[23] In this case, the visually challenged witness was unlikely to make a positive in-court identification, particularly in light of the changes in Horner's appearance. Further, "the occurrence of a one-on-one show-up, without more, does not necessarily require suppression of in-court identification. . . . The primary evil to be avoided is the 'substantial likelihood of irreparable misidentification.' " *Lindsey v. State.*[24]

In this case, there were a number of safeguards not present in pre-trial identifications. The clerk's identification was conducted in the presence of counsel and the jury. Counsel had the opportunity to cross-examine the witness as to his identification, and the jurors could weigh the clerk's credibility and view the photograph themselves to compare it with the actual defendant at trial to determine if Horner was the same man. Horner contends that the photograph is inadmissible, citing *DeCastro v. State,*[25] a case which is factually distinguishable. In *DeCastro,* the photo admitted showed the defendant with wild dreadlocks. The trial court held it was prejudicial. The photo was not relevant to any issue in the case. Here, the defendant had grown long hair and a beard by the time of trial and made it difficult for the clerk to identify him with his changed look from the time of contact. Viewing the booking photograph which indisputably was Horner gave the clerk the opportunity to see the defendant as he had been at the time of their contact. Viewing the photograph also gave the jury the opportunity to assess for itself the physical changes in Horner from a time close to the point when he was seen by the clerk. Further, the motel clerk's identification met several of the factors set out by the U. S. Supreme Court in *Neil v. Biggers*[26] for evaluating the likelihood of misidentification: the witness had the opportunity over several days to view and speak with the defendant; his description of the defendant's appearance was substantially accurate; and he was certain of his identification. Under these circumstances, the trial court did not err in admitting the photographic identification of Horner.

5. Horner enumerates as error the trial court's denial of his motions for new trial and j.n.o.v. contending that the State's evidence

---

[22] *Gardner v. State,* 263 Ga. 197, 199 (6) (429 SE2d 657) (1993).
[23] *Ralston v. State,* 251 Ga. 682, 684 (2) (309 SE2d 135) (1983).
[24] *Lindsey v. State,* 182 Ga. App. 10, 13-14 (2) (354 SE2d 650) (1987).
[25] *DeCastro v. State,* 221 Ga. App. 83 (470 SE2d 748) (1996).
[26] *Neil v. Biggers,* 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972).

was insufficient as a matter of law to sustain appellant's conviction without certain improperly admitted hearsay testimony and documents. We disagree.

Horner's argument that the evidence was circumstantial and therefore was insufficient to warrant a conviction is without merit. This Court has held that

> circumstantial evidence need not exclude every hypothesis of [Horner's] guilt but only reasonable ones. If the evidence meets this test, circumstantial evidence is as probative as direct evidence. Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence, and where the jury is authorized to find that the evidence was sufficient to exclude every reasonable hypothesis except that of guilt, this court will not disturb that finding unless the verdict of guilty is insupportable as a matter of law.

(Citation omitted.) *Moore v. State.*[27] The verdict in this case was supported by the evidence. Given our rulings on the alleged errors in the admission of evidence, the evidence was sufficient under the standards of *Jackson v. Virginia,* supra, and this enumeration is without merit.

6. Horner asserts that his trial counsel provided ineffective assistance of counsel in failing to object to evidence admitted at trial, including prior convictions, police reports, hearsay testimony, and photographic identification. The two-prong test set out in *Strickland v. Washington*[28] requires that Horner "show that (1) counsel's performance was deficient and (2) the deficiency so prejudiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency." *Jackson v. State.*[29]

The evidentiary issues, relating to the photographic identification, prior convictions, and police reports, have been addressed in the previous Divisions, and we held that such objections were without merit. Further we found that the evidence in the case was sufficient to support Horner's conviction. Ineffectiveness of trial counsel cannot be based on a failure to make meritless objections. Horner has failed to demonstrate error by the trial court in holding that trial counsel's services were effective. We note that appellate counsel was not the counsel at trial.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

---

[27] *Moore v. State,* 242 Ga. App. 208, 210 (1) (529 SE2d 210) (2000).

[28] *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[29] *Jackson v. State,* 248 Ga. App. 7, 10 (4) (545 SE2d 148) (2001).

DECIDED AUGUST 9, 2002.

*John T. Strauss*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Alan A. Cook, Assistant District Attorney*, for appellee.